UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Caroline Foss, | Case No. 20-cv-2449 (WMW/TNL) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| Standard Insurance Company, | |
| Defendant. | |

Before the Court are cross-motions for summary judgment. (Dkts. 28, 32.) For the reasons addressed below, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff Caroline Foss is a 37-year-old resident of Fitchburg, Massachusetts, who worked as the Assistant Director of Annual and Leadership Giving at Boston College. Defendant Standard Insurance Company (Standard) is the insurance company that issued Boston College's long-term disability (LTD) insurance policy (the Policy) and adjudicates LTD benefits claims made by employees under the Policy.

An employee in Foss's employment class who has a disability or is disabled is defined by the Policy as:

> (1)   . . . being unable due to sickness, bodily injury, or pregnancy to perform with reasonable continuity the Material Duties of your Normal Occupation; or

> (2) working, but due to sickness, bodily injury, or pregnancy being unable to earn 80% or more of your Increasing Monthly Wage Base.

"Normal Occupation" is defined as "any employment, business, trade, or profession that involves Material Duties of the same general character as the type of occupation you are regularly performing for your Employer when Disability begins."  Under the terms of the Policy, when determining a claimant's "Normal Occupation," Standard may evaluate the way an employee "perform[ed] [her] job for [her] Employer" as well as "the way this type of occupation is generally performed."  The Policy defines "Material Duties" as "the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted."  The Policy expressly provides that Standard has discretionary authority to determine whether employees insured by the Policy are entitled to benefits thereunder.

On December 11, 2019, Foss applied to Standard for LTD benefits.  Foss was 34 years old at that time.  Foss represented in her application that the illnesses that contributed to her inability to work at her occupation were depression and anxiety, both of which she first noticed on June 3, 2019.  Foss explained in her LTD application that she believed her illnesses were caused by stress and burnout, and she listed the following symptoms: "muscel [sic] aches, digestive upset, memory loss, fatigue, insomnia, emotional dysregulation."

In support of her application, Foss submitted an attending physician statement completed by Nurse Practitioner Jackie Raymond.  Nurse Raymond reported that Foss's

primary diagnosis was anxiety and attention-deficit/hyperactivity disorder (ADHD), and Foss's secondary diagnosis was depression.  Nurse Raymond reported that Foss's other symptoms and diagnoses included "lack of enjoyment/interest, new memory loss, muscle aches, fatigue."  In the assessment section of the form, Nurse Raymond recommended that Foss stop working on December 31, 2019, explaining that that Foss was "already not working," using her sick and vacation time to take time off work, and "will need to remain out of work."  According to Nurse Raymond, the planned course of treatment was counseling and prescribed ADHD medication, which Nurse Raymond identified.  Nurse Raymond stated that Foss needed long-term therapy.

Standard received some of Foss's medical records, including a June 14, 2019 progress note from Jennifer Schwartz, MD; a psychological evaluation conducted by George D. Bozicas, Ph.D.; a behavioral health diagnostic evaluation conducted by Christopher J. Griffith, LICSW; chiropractic treatment records from Terry Anelons; and other medical records from Foss's visits with Nurse Raymond.

In the June 14, 2019 progress note, Dr. Schwartz indicated that Foss was seeing a therapist who had "informally diagnosed [Foss] with [Major Depressive Disorder] secondary to acute stress/burnout versus adjustment disorder."  Dr. Schwartz wrote that Foss felt her issues were caused by her job and that Foss preferred to manage symptoms without medications.  Dr. Schwartz reported that Foss had a breakdown and since then had "been struggling with significant memory issues, insomnia, anxiety and fatigue."  Dr. Schwartz noted that Foss "has been unable to complete [activities of daily life] and husband has been having to hold her up at times, dress her, drive to/from work."

Dr. Schwartz wrote that Foss occasionally had "fits of screaming and crying," and had experienced gastrointestinal issues because of the stress.  But Foss did not have thoughts of self-harm.  Foss had previously tried the anti-anxiety medication Ativan but had experienced negative side effects.  Foss reported to Dr. Schwartz that medical marijuana "helps a lot" and requested a medical prescription for marijuana.  Dr. Schwartz also wrote that Foss had recently visited an emergency room seeking help.  Foss appears to have agreed to Dr. Schwartz's recommendation that Foss continue seeing her therapist, but Foss declined Dr. Schwartz's recommendation to establish care with a psychiatrist who could prescribe Foss medication.

In a November 18, 2019 ADHD Evaluation Report on Foss, Dr. Bozicas outlined his testing and concluded that the "test results supported the DSM-V diagnoses of ADHD, Predominantly Inattentive Presentation, Major Depressive Disorder and Generalized Anxiety Disorder."  Given Foss's ADHD and her levels of anxiety and depression, Dr. Bozicas wrote, "she might well benefit from ADHD medication at this time."

On November 22, 2019, Nurse Raymond conducted a comprehensive physical examination of Foss.  During the examination, Foss reported that nearly every day she was "bothered by little interest or pleasure in doing things" and "bothered by feeling down, depressed or hopeless."  Nurse Raymond reported that Foss was experiencing fatigue, change in weight, nausea/vomiting, change in bowl habits, urgent urination, new memory loss, anxiety, depression, and lack of enjoyment/interest.  Nurse Raymond prescribed Concerta to treat Foss's ADHD.  Nurse Raymond wrote that Foss was burned out and had

experienced a breakdown, after which Foss went on a six-month leave from work. Foss was seeing a therapist and used medical marijuana for insomnia and migraines.

On December 11, 2019, Foss saw Nurse Raymond for an office visit to follow up on "ADHD and anxiety and depression and other concerns as well as long term disability paperwork." Foss reported that the ADHD medication seemed to be working because she was sleeping better, was less anxious and felt more focused. Nurse Raymond's notes reflect that Foss had been experiencing nausea and diarrhea because of anxiety, but that those symptoms were slowly getting better. Nurse Raymond wrote that Foss would wake up at night to urinate only to realize she did not actually need to urinate, which Foss believed was a symptom of her anxiety. Nurse Raymond also reported musculoskeletal issues that Foss was successfully treating through chiropractic care. At Foss's request, Nurse Raymond referred Foss for a consultation with a therapist at Nurse Raymond's healthcare facility. Although Foss declined medications for anxiety and depression during the appointment, Foss indicated that she might consider them in the future.

On December 18, 2019, Foss saw Griffith for a behavioral health diagnostic evaluation, which the medical records describe as a psychiatric diagnostic interview exam. Griffith listed Foss's diagnoses as ADHD (predominantly inattentive type), anxiety, depression, and intractable migraine without aura and without status migrainosus. Griffith wrote that Foss reported that her anxiety began about two years earlier and that she experienced anxiety, depressed mood, fatigue, low energy, poor concentration, restlessness, and struggles to take care of herself. Although Concerta may have led to improvements in Foss's sleep, Griffith reported, Foss felt isolated and had a reduced

5

appetite. Griffith explained that Foss "reports a lot of stress related to work." Griffith reported that Foss's anxiety and depression escalated to the point where Foss collapsed and her husband brought her to the emergency room. Following his evaluation, Griffith recommended treatment through at least six individual psychotherapy sessions to "reduce frequency and intensity of symptoms of anxiety and depression."

Standard also reviewed medical records for Foss's office visits with Terry Anelons, a practitioner at Harvard Chiropractic, PC. These records indicate that Foss experienced upper back pain due, in part, to stress and use of a computer. The records suggest that Foss's back pain improved through chiropractic care.

Standard initially commissioned three medical professionals to review Foss's medical records: Bo Irish, RN, BSN, MS, CPDM; Gary Nudell, M.D., Board Certified in Internal Medicine; and David Yuppa, M.D., Board Certified in Psychiatry. None of these medical professionals met with Foss.

On December 31, 2019, Nurse Irish completed a nurse file review of Foss's medical records. Nurse Irish acknowledged Foss's ADHD, anxiety/depression, and back and neck pain. Nurse Irish, who appears to have only focused on Foss's physical ailments, concluded that "available medical records do not reflect the extent of physical complaints." Nurse Irish then referred the file for an additional behavioral health review.

On January 8, 2020, Dr. Nudell issued his review of Foss's medical records. Dr. Nudell reported that Foss stopped working as a result of diagnoses of stress and anxiety and that he did "not feel that non-mental health issues are impairing [Foss]." Dr. Nudell, therefore, concluded that Foss's medical records did not support an internal medicine

6

diagnosis that would result in functional impairment because the impairing diagnoses appeared to be related to "behavioral/mental health," which would have to be evaluated by a different reviewer who specialized in mental health.

On January 8, 2020, Dr. Yuppa issued his review of Foss's medical records. Dr. Yuppa concluded that the medical records supported a diagnosis of ADHD. Dr. Yuppa hypothesized, however, that Foss's diagnosis of "major depression/generalized anxiety disorder" was incorrect and that Foss would be more properly diagnosed as having an "adjustment disorder with mixed anxiety and depressed mood." Dr. Yuppa determined that Foss's "emotional distress is due to her workplace issues/reports of burnout." Dr. Yuppa wrote that Foss "declined pharmacologic intervention (other than self-administered cannabis)" and that "[t]he evidence does not support psychiatric impairment/restrictions/ limitations from 6/3/2019 forward." Dr. Yuppa asserted that, to find a qualifying impairment, the medical "records would include consistent/ongoing documentation of evidence of symptomatology such as suicidal/harmful ideation with intent/plan, poor impulse control, paranoia, psychosis, delusional thinking, disorganized thought processing, aggressive/hostile ideation/behavior, or conversely, catatonic-like or excessively withdrawn behavior (thus indicating impairment in social functioning)." Dr. Yuppa also stated that Foss's decision to "decline pharmacological treatment for anxiety/depression . . . is not consistent with the presence of an incapacitating mood/anxiety disorder." Dr. Yuppa suggested that Foss's reports of not being able to carry out activities of daily living and needing her husband to dress her were undermined by Foss's medical providers' observations that Foss did not look disheveled or unkempt.

In light of the reports that Standard commissioned from Nurse Irish, Dr. Nudell and Dr. Yuppa on their respective reviews of Foss's medical records, on January 14, 2020, Standard sent a letter to Foss denying her LTD claim. Standard stated that it denied Foss's claim because she did not meet the definition of disability under the terms of the Policy. Standard provided an overview of Foss's medical records and concluded that "[Foss's] records support that [Foss's] emotional distress is due to [Foss's] workplace issues/reports of burnout." Standard's letter went on to explain that "the records do not support that [Foss] had been in any ongoing treatment with a psychiatrist, prescribed medications for depression/anxiety, nor is there evidence to support the medical necessity for a higher level of care, such as hospitalization or intensive out patient program or partial outpatient program." Standard concluded that the "evidence demonstrates that [Foss's] primary impediments to [her] continued employment were directly related to [her] specific circumstances at [her] specific place of employment." Standard explained that the Policy insures employees who are unable to perform the material duties of their normal occupation, not their specific job. Standard stated that if "there are personal difficulties that you had at a specific worksite that would prevent you from returning[,] it does not equate to you being unable to perform the occupation as a whole, given the benefit of a neutral work environment away from the particular stresses you encountered at your worksite." Standard concluded that there was insufficient documentation from June 3, 2019, to support the conclusion that Foss is psychologically unable to perform her normal occupation.

On July 2, 2020, Foss appealed her denial of benefits, attaching Bozicas's November 18, 2019 ADHD Evaluation Report along with records from Reliant Medical Care documenting Foss's January 2020 individual psychotherapy treatment. Standard requested that Michael Rater, M.D., Board Certified in Psychiatry, review Foss's medical records and that Brian Peterson, CRC, Vocational Case Manager, review Foss's LinkedIn profile and the job description supplied by Foss's employer. On July 17, 2020, Peterson issued an "Own Occupation Memo/Review" in which he concluded that Foss's job comports with the "Major Gifts Manager" eDOT job title and is classified as sedentary. Dr. Rater issued his report on August 10, 2020, following his review of Foss's medical records. Dr. Rater identified Foss's psychological diagnoses as being ADHD and adjustment disorder with mixed anxiety and depressed mood. Dr. Rater concluded that Foss's psychological diagnoses, and her treatment thereof, did not indicate that these were impairing psychiatric conditions. Dr. Rater observed that Foss's reported improvements in anxiety, depression, sleep, fatigue, GI issues, back issues, and memory appeared to relate to Foss beginning ADHD medications and Foss leaving her workplace. Dr. Rater concluded that that "[t]here is no evidence in the records that Ms. Foss would not be capable of working 40 hours per week without the intrusion of psychological symptoms of a severity to cause limitations with her production, pace, and/or persistence."

On August 17, 2020, in a letter to Foss's counsel, Standard advised that, based upon Dr. Rater and Peterson's reports, Standard concluded that Foss is not unable to perform the material duties of her normal occupation and, therefore, Foss does not meet the definition of disability necessary to qualify for LTD benefits. Standard provided Foss with an

opportunity to respond to these new reports commissioned by Standard. On November 12, 2020, Standard sent Foss's counsel a letter rejecting Foss's appeal and denying Foss's LTD benefits claim. In support of its denial, Standard cited Foss's failure to receive regular mental health treatment until five months after leaving work; a four-month lapse in Foss's treatment following her diagnosis; Foss's timeliness and well-groomed appearance at her medical appointments; and the fact that, despite having ADHD, Foss was able to complete college, earn a master's degree, maintain a career, and have a partner. Standard reasoned that although Foss's particular work situation might be causing her stress, "her medical records do not provide clinical evidence of symptoms so severe as to impair her ability to work for all employers."

On December 3, 2020, Foss commenced this lawsuit, alleging that Standard's denial of her claim for LTD benefits violates the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq*. Foss and Standard cross-move for summary judgment. Foss argues that Standard erred by finding that she is not disabled under the terms of the Policy and that Standard failed to undertake a full and fair review of her medical records. Standard argues that Foss fails to prove that Standard's decision to deny Foss's LTD benefits claim is arbitrary and capricious.

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

Courts "review a denial of benefits under the deferential arbitrary and capricious standard applicable to those cases in which the ERISA plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Lickteig v. Bus. Men's Assurance Co. of Am.*, 61 F.3d 579, 583 (8th Cir. 1995) (internal quotation marks omitted) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 947 n.4 (8th Cir. 2000) (explaining that the United States Court of Appeals for the Eighth Circuit uses the terms "abuse of discretion" and "arbitrary and capricious" interchangeably when evaluating ERISA cases).[1] Neither party disputes that the Policy

---

[1] In its motion for summary judgment, Standard contends that, "[a]s the Policy was issued in the State of Massachusetts and Plaintiff resides in Massachusetts, the law of the

vests Standard with the discretion to determine eligibility and to construe the terms of the Policy. The Court, therefore, reviews Standard's decision under the arbitrary-and-capricious standard.

Under the arbitrary-and-capricious standard of review, a court must uphold a plan administrator's decision so long as the administrator provides a "reasonable explanation for its decision, supported by substantial evidence." *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007). Substantial evidence is "more than a scintilla but less than a preponderance." *Leonard v. Sw. Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003) (internal quotation marks omitted). The focus of a court's analysis is whether a "reasonable person could have reached a similar decision . . . not that a reasonable person would have reached that decision." *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 794 (8th Cir. 2002) (internal quotation marks and emphasis omitted). "This highly deferential standard reflects the fact that courts are hesitant to interfere with the administration of [an ERISA] plan." *Khoury v. Grp. Health Plan*, 615 F.3d 946, 952 (8th Cir. 2010) (internal quotation marks omitted). A plan administrator, however, "abuses its discretion when it ignores relevant evidence." *Willcox v. Liberty Life Assurance Co. of Bos.*, 552 F.3d 693, 701 (8th Cir. 2009).

Here, by the end of the appeal process, Foss's submissions to Standard in support of her application for LTD benefits included: Foss's LTD benefits application; Nurse

---

First Circuit Court of Appeals governs the legal standard on this motion for summary judgment." Standard provides no authority to support its contention that this Court must apply the law of the First Circuit, and the Court has identified no legal basis for Standard's assertion. The Court, therefore, applies the law of the Eighth Circuit.

Raymond's physician statement; Nurse Raymond's notes from her appointments with Foss; Dr. Bozicas's psychological evaluation of Foss; Griffith's behavioral health diagnostic evaluation of and reports from two psychotherapy sessions with Foss; and Anelons's treatment records from chiropractic appointments with Foss. Foss's records confirm that she has been diagnosed with ADHD, major depressive disorder and generalized anxiety disorder. Despite Standard's reviewers' skepticism of Foss's major depressive disorder diagnosis, at least two medical practitioners have diagnosed Foss with major depressive disorder. Foss's medical records also suggest that, by the time Foss applied for LTD benefits, Foss's mental health condition had deteriorated to the point where she struggled to sleep, experienced at least one breakdown resulting in an emergency room visit, struggled to take care of and dress herself, experienced anxiety-induced gastrointestinal issues and nausea, and experienced memory loss. The records reflect that, following her ADHD diagnosis, Foss began receiving treatment in the form of an ADHD medication called Concerta. Foss reported that the medication had a positive impact on some of her symptoms. But Foss reported that she was still struggling with depression, anxiety and resulting symptoms.

Standard undertook an initial review of Foss's records and then a second review following Foss's appeal of Standard's first denial of benefits. Both of Standard's psychological reviewers downgraded Foss's major depressive disorder and generalized anxiety disorder diagnoses to an "adjustment disorder with mixed anxiety and depressed mood." Standard's reviewers concluded that Foss's reluctance to pursue pharmaceutical treatment for her anxiety and depression undermined her disability claim. In reaching this

conclusion, the reviewers did not acknowledge that Foss had reported to her medical providers that her ADHD medications helped alleviate some of her anxiety, that Foss was open to considering other pharmaceutical intervention at a later date, and that Foss had requested a prescription for medical marijuana, the consumption of which Foss reported helped alleviate her symptoms. Standard and its reviewers also cited, as a basis for their conclusion that Foss is not disabled under the terms of the Policy, Foss's explanation that she believed that many of her symptoms resulted from difficulties at her workplace. As Standard explained in its denial letters, the test for receiving disability benefits is not whether Foss cannot perform her specific job with her specific employer—it is whether she could not perform that category of job with any employer. That is, Standard must determine whether Foss has a disability that would preclude her from performing this category of job *anywhere*.

The record clearly establishes that Foss experienced significant mental health struggles, that Foss's employment at Boston College exacerbated her condition, and that Foss's condition improved, at least marginally, when Foss began treating her ADHD. These facts notwithstanding, because this Court's review of Standard's denial must be "highly deferential," *Khoury*, 615 F.3d at 952 (internal quotation marks omitted), and the Court must decide whether a "reasonable person *could* have reached a similar decision," *Phillips-Foster*, 302 F.3d at 794, the Court finds that a reasonable person could have reached a decision similar to the one which Standard reached. A reasonable person could have concluded that, although Foss's mental health diagnoses are significant and legitimate, her diagnoses and resulting symptoms are not disabling such that she could not

14

perform this type of job for *any* employer. For this reason, the Court concludes that Standard's denial of benefits was not arbitrary and capricious, denies Foss's motion for summary judgment and grants Standard's motion for summary judgment.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Caroline Foss's motion for summary judgment, (Dkt. 28), is **DENIED**.

2. Defendant Standard Insurance Company's motion for summary judgment, (Dkt. 32), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 19, 2022

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge